67626. WILLIAMS v. THE STATE.
68056. BATISTE v. THE STATE.

McMURRAY, Chief Judge.

Defendants were convicted of possessing with intent to distribute more than 400 grams of cocaine, in violation of the Georgia Controlled Substances Act. The enumerations of error as to each appel-

lant are different and will be discussed separately.

Defendants were arrested at the Atlanta Airport after questioning by narcotics officers whose suspicions were aroused by their behavior after they got off a plane from Fort Lauderdale, Florida, together. A kilogram (2.2 pounds) of cocaine was found in a search of Ms. Batiste's purse; a small capsule of cocaine was found hidden in Williams' undershorts; and a small amount of marijuana was found in his bag. Defendants were tried only for possession of the cocaine in Ms. Batiste's purse. Other facts will be included in our discussion of the separate enumerations of error.

### Defendant Batiste

1. Defendant Batiste contends the trial court erred by denying her motion to suppress the cocaine found in her purse because her arrest was illegal. The defendants were arrested by Paul Markonni, a special agent of the Drug Enforcement Administration (DEA). Markonni testified that he informed defendant Batiste that she was arrested because "we felt she was in possession of drugs" and also for giving a false name to law enforcement officers. Defendant Batiste argues that Markonni lacked probable cause to arrest her for possession of drugs and that Markonni lacked authority to arrest her for the misdemeanor offense of giving a false name to law enforcement officers.

Pretermitting the issue of whether there was probable cause for the arrest of defendant Batiste for possession of drugs we address the authority of Markonni to make the arrest for the misdemeanor offense of giving a false name to a law enforcement officer. Obviously Markonni, under his arrest powers as a DEA agent, lacked authority to arrest defendant Batiste for the misdemeanor offense against the State of Georgia (as opposed to a crime cognizable under the laws of the United States). See 21 USC § 878 (3). Also, while there was evidence that Markonni had been sworn in as a deputy sheriff of Fulton County and Markonni testified that he accomplished the arrest as a deputy sheriff of Fulton County, it was uncontroverted that Markonni had not attended (nor received a waiver by certificate of compliance of) certain instructional training courses under the provisions of the Georgia Peace Officer Standards and Training Act (then Code Ann. Title 92A, Ch. 21, now OCGA § 35-8-1 et seq.). (Also note these events transpired prior to the enactment of OCGA § 35-9-15.) Thus, Markonni had no power of arrest as a deputy sheriff because then Code Ann. § 92A-2115 (now OCGA § 35-8-17 (a)) provides: "Any peace officer . . . who does not comply with the provisions of this chapter shall not be authorized to exercise the powers of law enforcement officers generally and particularly shall not be authorized to ex-

ercise the power of arrest." Failure to comply with the Act renders the arrest unauthorized. *Mason v. State*, 147 Ga. App. 179, 182 (7) (248 SE2d 302). However, such a characterization of an arrest as unauthorized is not equivalent to a determination, nor even necessarily implies, that the arrest is illegal. Instead, "[t]he non-complying peace officer is thereby relegated to the status of a private citizen who is also authorized to effect an arrest under certain circumstances." *Mason v. State*, 147 Ga. App. 179, 182 (7), supra.

As he was unauthorized to exercise the arrest powers of a Fulton County deputy sheriff, the issue becomes whether Markonni as a private citizen could legally arrest defendant Batiste for giving a false name to a law enforcement officer, a misdemeanor offense to which Markonni's arrest powers as a DEA agent were not applicable. "A private person may arrest an offender if the offense is committed within his presence or within his immediate knowledge." Code Ann. § 27-211 (now OCGA § 17-4-60). A private person may make an arrest for a misdemeanor offense only when that offense occurs within his presence and moreover the arrest must occur immediately after the perpetration of the offense. *Delegal v. State*, 109 Ga. 518, 521-522 (1) (35 SE 105); *Walker v. State*, 144 Ga. App. 838 (2) (242 SE2d 753).

The record clearly shows probable cause for Markonni to have believed defendant Batiste guilty of committing the misdemeanor offense of giving a false name to a law enforcement officer. Code Ann. § 26-2506 (now OCGA § 16-10-25); *Johnson v. State*, 149 Ga. App. 273 (253 SE2d 889); *Mallory v. State*, 164 Ga. App. 569, 570 (4) (298 SE2d 290). Markonni was a law enforcement officer in the lawful discharge of his official duties (as a DEA agent) when defendant Batiste gave him a false name. Additionally, Markonni was accompanied by a City of Atlanta police officer who was participating in the investigation and present at the time defendant Batiste gave the false name. The officers' proximity at the time of the statement and involvement in the investigation present evidence that the offense of giving a false name to a law enforcement officer was also committed in regard to this police officer. The misrepresentation was clearly made within the presence and within the immediate knowledge of Markonni. The arrest by Markonni was effected immediately after perpetration of the offense. Therefore, Markonni's arrest of defendant Batiste was a lawful citizen's arrest. After the lawful arrest of defendant Batiste the facts and circumstances surrounding her detention resulted in the lawful discovery that she was a drug trafficker. *Cash v. State*, 136 Ga. App. 149 (3) (221 SE2d 63); *Walker v. State*, 144 Ga. App. 838 (2), 839, supra.

2. The issues raised as to the punishment imposed for "trafficking in cocaine" raised by defendant Batiste in her motion to quash the indictment have been decided adversely to her in *Paras v. State*,

247 Ga. 75 (274 SE2d 451).

3. The trial court did not err in permitting the State to call, in rebuttal as to the competence of an expert witness tendered by defendant, a witness who had not been sequestered. *Gibbons v. State*, 248 Ga. 858, 865 (286 SE2d 717).

4. Defendant Batiste contends that the State was improperly allowed to examine her expert witness as to irrelevant matters. Defendant's expert was allowed to testify as to the data from tests (gas-liquid chromatograph and nuclear magnetic resonance spectrometer) conducted by the State's expert chemist in the course of determining that white powder seized from defendant Batiste was cocaine. In the course of voir dire of defendant's expert as to his qualifications, the State was permitted to ask defendant's expert whether he had been held not competent to analyze controlled substances. Although defendant's expert did not conduct any test of the substance himself, his interpretation of the State's data was obviously substantially similar to an integral part of the testing procedure that is the interpretation of raw data. Thus, we cannot say that the State's inquiry was not relevant. The trial court has wide discretion in determining relevancy, and where relevancy is in doubt the evidence should be admitted and its weight left to the finder of fact. *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408); *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360).

5. Defendant Batiste enumerates as error the denial of her motion to strike the testimony of the State's expert witness, a chemist. Defendant Batiste contends that the State failed to properly respond to a motion for discovery of scientific reports under the provisions of Code Ann. § 27-1303 (now OCGA § 17-7-211) in that the State provided only a document setting forth the conclusion of the State's expert and failed to provide two documents described as "printouts."

Defendant Batiste acknowledges that her position is contrary to our recent decisions such as *Hartley v. State*, 159 Ga. App. 157, 158-160 (2) (282 SE2d 684); and *Sears v. State*, 161 Ga. App. 515 (288 SE2d 757), but urges us to overrule these decisions. We decline to do so and note that our Supreme Court has cited these cases with approval. *Williams v. State*, 251 Ga. 749, 753-754 (312 SE2d 40).

6. Defendant Batiste's final enumeration of error contends that there are breaks in the chain of custody of the evidence found in defendant Batiste's purse following her arrest. Markonni testified that he sealed the white powder seized from defendant Batiste in a DEA evidence bag. According to Markonni the DEA evidence bags come factory sealed on three sides and after evidence is placed therein an evidence seal is placed on the top and the bags are heat sealed on the fourth side making the bags virtually tamper proof. Markonni testified that State Exhibit 7 was the same package in which he had placed the white powder seized from defendant Batiste and sent to

the crime lab, and that the only alterations were two cuts taken off the bottom of the bag which were sealed in the bag. The prosecution's chemist testified that he received State's Exhibit 7 for testing, that at that time it was sealed, that it did not appear to have been entered since it was sealed at the top and that it was unlikely that the bag could have been entered since it was sealed at the top without it being apparent to him. The chemist opened the bag by cutting off a portion of the bottom of the bag, the portion being cut being afterwards placed within the bag as a match to verify how many times the bag had been entered. The chemist testified that he tested the contents of Exhibit 7 and determined it to be 1,003 grams of 73% cocaine hydrochloride which would be equivalent to 730 grams of unadulterated cocaine.

The State has satisfied its burden of showing with reasonable certainty "that the evidence examined is the same as that seized and that there has been no tampering or substitution." *Phillips v. State*, 167 Ga. App. 260, 263 (2) (305 SE2d 918). See also *Patterson v. State*, 224 Ga. 197, 199 (2) (160 SE2d 815).

### *Defendant Williams*

7. Defendant Williams contends that the trial court erred in denying his motion for severance. Defendant Williams argued that his co-defendant Batiste would testify and give exculpatory testimony in his behalf. However, defendant Williams has failed to make a showing demonstrating the four criteria listed in *Stevens v. State*, 165 Ga. App. 814, 817 (302 SE2d 724), adopted from United States v. Butler, 611 F2d 1066 (5th Cir. 1980). Indeed, defendant Williams presented no evidence in support of his motion, his counsel vaguely offering to present some unspecified affidavits which he did not have with him at some later date. We find no abuse of discretion in the denial of defendant Williams' motion to sever. *Johnson v. State*, 159 Ga. App. 819, 821 (285 SE2d 252); *Stevens v. State*, 165 Ga. App. 814, 815-818 (3), supra.

8. Defendant Williams' second enumeration of error contends that the trial court erred in dismissing his pretrial motion to suppress evidence. To the extent this may have been error it was rendered harmless when at trial defendant Williams was permitted to renew his motion to suppress, incorporating the facts and arguments set forth in his original motion to suppress plus additional contentions.

9. Defendant Williams' final enumeration of error contends that the trial court erred in denying the renewed motion to suppress evidence which he was permitted to file at trial and which was considered on its merits by the trial court. Insofar as defendant Williams may have standing to challenge the search of defendant Batiste (see the recent case of United States v. Brown (CA 11th Cir., May 10,

1984)), such a challenge is without merit for the reasons stated in Division 1 of this opinion.

Nor did law enforcement officers lack probable cause to arrest defendant Williams. The discovery of suspected cocaine in the purse of defendant Williams' traveling companion along with the evidence that defendant Williams was traveling from a drug distribution center under a false name on an airline ticket reserved and purchased shortly prior to his departure for cash, and was extremely nervous when approached by the officer, provided law enforcement officers with a reasonable suspicion, that is, probable cause to believe that defendant Williams was participating in drug trafficking. We note that the significance of defendant Williams' conformity to the drug courier profile, an administrative tool of law enforcement officers, the validity of which is often questioned, is enhanced by the actual discovery of contraband in the purse of defendant Williams' companion. Compare *Bothwell v. State*, 250 Ga. 573, 580 (7) (300 SE2d 126).

*Judgments affirmed. Deen, P. J., Quillian, P. J., Banke, P. J., and Birdsong, J., concur. Pope, J., concurs specially. Benham, J., concurs in the judgment only. Carley and Sognier, JJ., dissent.*

DECIDED JULY 16, 1984 —
REHEARING DENIED JULY 31, 1984 —

*Jerry L. Patrick, Jr.*, for appellant (case no. 67626).
*Wade M. Crumbley*, for appellant (case no. 68056).
*Robert E. Keller, District Attorney, William L. McKinnon, Assistant District Attorney*, for appellee.

POPE, Judge, concurring specially.

While I agree with the judgment of the majority, I base my decision upon a wholly different rationale from that advanced in Division 1. At the time of appellants' arrests, Agent Markonni had not complied with the technical requirement of OCGA § 35-8-9 (a): completion of a certified basic training course for peace officers. However, OCGA § 35-8-9 (b) authorizes the certifying council to recognize and give credit, in lieu of completion of such course, for instruction received which is at least equivalent to the required basic training. Although Agent Markonni obtained no formal waiver pursuant to OCGA § 35-8-9 (b), the evidence adduced on the hearing of appellants' motion to suppress clearly shows Markonni's training and experience as a law enforcement officer to be *at least* the equivalent of a basic training course. Inter alia, Markonni testified that he has sixteen years of experience as a federal law enforcement officer, eight of which have been spent in the enforcement of drug laws in major air-

ports in this country. For five of these eight years, Markonni has been assigned to the Atlanta airport detail. Indeed, in the particular area of police work in which he is employed and during the course of which he arrested appellants, Markonni's training and experience would certainly far exceed that offered in a basic training course.

Therefore, notwithstanding the absence of a formal waiver of his compliance, it is reasonable to assume that such would be credited to Markonni in lieu of the required basic training course. I find, as apparently did the trial judge, Markonni to be in substantial compliance with the spirit of OCGA § 35-8-9 sufficient to make a valid arrest for violation of OCGA § 16-10-25. See generally *Harvey v. State*, 165 Ga. App. 7 (2) (299 SE2d 61) (1983); *Davis v. State*, 164 Ga. App. 312 (2) (295 SE2d 131) (1982). In light of the foregoing, I concur in affirming the trial court's denial of appellants' motion to suppress.

SOGNIER, Judge, dissenting.

I respectfully dissent. Agent Markonni had no authority to arrest appellant Batiste for violation of a Georgia law (giving a false name to a police officer), and no probable cause to arrest Batiste on the ground that a federal felony offense was being committed in his presence.

In regard to Markonni's authority as a Fulton County deputy sheriff to arrest Batiste, Markonni testified that his boss called the sheriff of Fulton County and requested that Markonni and three other DEA agents be appointed deputy sheriffs. The sheriff complied with the request and Markonni was appointed a deputy sheriff. However, he also testified that he took no actions to meet the requirements for appointment as a peace officer set forth in then Code Ann. § 92A-2109 (now OCGA § 35-8-9), nor did he receive a certificate of compliance (waiver) by the Peace Officer Standards and Training Council for having completed an "equivalent" course of instruction. Thus, under the express provisions of Code Ann. § 92A-2115 (now OCGA § 35-8-17 (a)), Markonni was not authorized to exercise the powers of arrest, and this court has so stated in *Mason v. State*, 147 Ga. App. 179, 182 (7) (248 SE2d 302) (1978).

In regard to Markonni's arrest powers as a DEA agent, he is authorized to make arrests without a warrant for any felony *if he has probable cause to believe* that the person to be arrested has committed or is committing a felony. 21 USC § 878 (3).

Markonni testified that Batiste's actions fit the "drug courier profile" which aroused his suspicions. While such facts would be sufficient to warrant an "articulable suspicion" that Batiste was carrying drugs, we have held consistently that an "articulable suspicion" is *less than probable cause* to make an arrest or conduct a search. *Allen v. State*, 140 Ga. App. 828, 830 (232 SE2d 250) (1976); *Radowick v.*

*State*, 145 Ga. App. 231, 233 (244 SE2d 346) (1978); *Smith v. State*, 159 Ga. App. 20, 22 (2) (282 SE2d 677) (1981). In the instant case, Markonni himself testified that *"my suspicions as we all know are not probable cause."* (Emphasis supplied.)

It is well established that evidence that a defendant's behavior fits the "drug courier profile" does not establish probable cause to make an arrest. *Bowers v. State*, 151 Ga. App. 46 (258 SE2d 623) (1979), affirmed 245 Ga. 367 (265 SE2d 57) (1980); Reid v. Georgia, 448 U. S. 438 (100 SC 2752, 65 LE2d 890) (1980); Florida v. Royer, ___ U. S. ___ (103 SC 1319, 75 LE2d 229) (1983).

Since Markonni's *only* basis for arresting Batiste was that she fit the "drug courier profile," he had no probable cause to arrest her. *Bowers*, Reid and Royer, supra. As the cocaine was obtained as a result of a search incident to an illegal arrest, it was not admissible in evidence. *Powell v. State*, 163 Ga. App. 801, 803 (295 SE2d 560) (1982). Accordingly, I would reverse.